**Dennis NILES, Plaintiff,**

v.

**Jung Y. LOWE, Individually and in his capacity as Chief Disciplinary Counsel of the Supreme Court of the State of Hawaii, Defendant.**

**Civ. No. 75–0322.**

United States District Court, D. Hawaii.

Feb. 2, 1976.

Eric A. Seitz, Honolulu, Hawaii, for plaintiff.

Jung Y. Lowe, Honolulu, Hawaii, for defendant.

Before CHOY, Circuit Judge, and KING and PENCE, District Judges.

## MEMORANDUM AND ORDER

Samuel P. King, Chief Judge.

This action arises from the initiation of disciplinary proceedings against plaintiff Niles, an attorney duly licensed to practice law by the Supreme Court of the State of Hawaii. Plaintiff is alleged to have violated Disciplinary Rules of the Supreme Court of the State of Hawaii (hereinafter "DR") 2–101(A)[1] and DR 2–101(B)[2] by publishing and disseminating statements announcing weekly visits by plaintiff or another member of his law firm to the campus of Leeward

1. DR 2–101(A) provides:

2–101 Publicity in General

(A) A lawyer shall not prepare, cause to be prepared, use, or participate in the use of, any form of public communication that contains professionally self-laudatory statements calculated to attract lay clients; as used herein, "public communication" includes, but is not limited to, communication by means of television, radio, motion picture, newspaper, magazine, or book.

2. DR 2–101(B) provides:

(B) A lawyer shall not publicize himself, his partner, or associate as a lawyer through newspaper or magazine advertisements, radio or television announcements, display advertisements in city or telephone directories, or other means of commercial publicity, nor shall he authorize or permit others to do so in his behalf except as permitted under DR 2–103. This does not prohibit limited and dignified identification of a lawyer as a lawyer as well as by name:

(1) In political advertisements when his professional status is germane to the political campaign or to a political issue.

(2) In public notices when the name and profession of a lawyer are required or authorized by law or are reasonably pertinent for a purpose other than attraction of potential clients.

Community College for the purpose of providing free legal counselling to students and faculty at that institution.

Defendant Lowe is Chief Disciplinary Counsel of the Supreme Court of the State of Hawaii. According to plaintiff's allegations, defendant informed him in early 1975 that his activities at Leeward College were being investigated. On September 2, 1975, after plaintiff had furnished defendant with certain information relating to those activities, plaintiff was summoned to appear before defendant to receive an informal admonition[3] based on defendant's finding that plaintiff had violated DR 2–101(A) and (B). Plaintiff alleges that he was told that he could seek a formal hearing before a hearing committee of the Disciplinary Board of the Supreme Court of the State of Hawaii rather than accept the proposed informal admonition. Plaintiff rejected both of these alternatives and filed the instant lawsuit on September 24, 1975. He alleges that his first, fifth, sixth, and fourteenth amendment rights have been violated by defendant and will be further violated unless this court restrains the enforcement of DR 2–101(A) and (B). Plaintiff bases his claims for relief on 28 U.S.C. §§ 2201 and 2202 and on 42 U.S.C. § 1983. He invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331 and 1343.[4]

> (3) In routine reports and announcements of a bona fide business, civic, professional, or political organization in which he serves as a director or officer.
> (4) In and on legal documents prepared by him.
> (5) In and on legal textbooks, treatises, and other legal publications, and in dignified advertisements thereof.

**3.** Rule 9 of the Disciplinary Board Rules (which, along with the Disciplinary Rules of the Supreme Court of the State of Hawaii provide the procedures for disciplinary proceedings) empowers the Chief Disciplinary Counsel to issue an informal admonition to an attorney if misconduct on the part of the attorney is found but is not sufficiently serious to warrant the institution of formal disciplinary proceedings. "Informal admonition" is nowhere defined in either the Disciplinary Rules or the Disciplinary Board Rules but we gather that it amounts to a stern warning to the attorney being admonished.

■ The Anti-Injunction Statute, 28 U.S.C. § 2283, poses no statutory bar to the issuance of the requested injunction in this case since plaintiff's claim is based on 42 U.S.C. § 1983. *See Mitchum v. Foster,* 407 U.S. 225, 243, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). Nevertheless, the restraints on federal equitable power imposed by *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) here preclude the issuance of an injunction.[5]

In *Younger,* the Supreme Court prohibited federal injunctive relief against pending state criminal prosecutions unless the plaintiff could establish certain extraordinary circumstances permitting such relief. These prohibitions were extended in *Huffman* to at least certain types of pending state civil proceedings. At issue in *Huffman* were Ohio civil proceedings instituted by a county prosecutor under a civil statute proscribing obscene films. *Huffman v. Pursue, Ltd., supra,* 420 U.S. at 598, 95 S.Ct. 1200. The Supreme Court, noting the similarity in purpose and standards between the Ohio civil and criminal obscenity statutes,[6] held that *Younger* restraints applied to pending state civil proceedings where, as in *Huffman,* the State is a

**4.** A three judge court was convened pursuant to 28 U.S.C. § 2281 since plaintiff seeks, *inter alia,* an injunction restraining a state officer from enforcing a state regulation of statewide applicability on the ground that it violates the United States Constitution. It is of no significance that a regulation, rather than a statute, is the subject of the plaintiff's complaint. *See, e. g., Phillips v. United States,* 312 U.S. 246, 251, 61 S.Ct. 480, 85 L.Ed. 800 (1941) and *Doe v. Wohlgemuth,* 376 F.Supp. 173 (W.D.Pa. 1974).

**5.** These restraints apply equally to plaintiff's request for declaratory relief. *See Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971) and *cf. Steffel v. Thompson,* 415 U.S. 452, 472, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).

**6.** The definition of obscenity in the Ohio civil statute is identical to the definition of obscenity in the Ohio criminal statute. *See Huffman v. Pursue, Ltd., supra,* 420 U.S. at 596, n. 4, 95 S.Ct. 1200.

party and "the proceeding is both in aid of and closely related to criminal statutes . . . ." *Id.* at 604, 95 S.Ct. at 1208.[7]

■ Lower courts have considered the applicability of *Younger* principles to disciplinary proceedings against lawyers. In *Erdmann v. Stevens,* 458 F.2d 1205 (2d Cir.), *cert. denied,* 409 U.S. 889, 93 S.Ct. 126, 34 L.Ed.2d 147 (1972) the Second Circuit held that a bar disciplinary proceeding was "quasi-criminal" and therefore fell within *Younger's* prohibitions on federal court interference with pending state criminal prosecutions. *Id.* at 1209.[8] Yet bar disciplinary proceedings[9] cannot be considered part of a State's criminal justice system, *see Polk v. State Bar of Texas,* 480 F.2d 999, 1007 (5th Cir. 1973) and we do not find that using the "quasi-criminal" label advances analysis of *Younger* principles in this case.[10]

Furthermore, we do not find the proposed interference in the pending civil case is "comparable to the disruption in *Huffman* of the state's interest in maintaining the standards of its criminal laws," *Anonymous v. Association of the Bar of the City of New York,* 515 F.2d 427, 432 (2d Cir.), *cert. denied,* 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975). The bar disciplinary proceeding at issue in this case, unlike the civil proceeding in *Huffman, see* note 6 *supra,* cannot be considered "in aid of" or "closely related to" state criminal statutes. *Huffman v. Pursue, Ltd., supra,* 420 U.S. at 604, 95 S.Ct. 1200. As the Fifth Circuit has said,

> we think it abundantly clear that when a Grievance Committee, by administrative action, undertakes to upbraid a local attorney for conduct deemed to be violative of the ethical standards of the profession, . . . it is not in any sense acting in aid of the enforcement of Texas' criminal laws.

*Polk v. State, supra,* 480 F.2d at 1002.[11]

7. Whether *Younger* restraints apply to any other types of civil proceedings was a question left explicitly unanswered by the Supreme Court, *see id.* at 607, 95 S.Ct. 1200, and we need not answer that question for purposes of this case. *But cf. Lynch v. Snepp,* 472 F.2d 769 (4th Cir. 1973) (*Younger* applies to all pending state proceedings, civil and criminal).

8. *See also Anonymous v. Association of the Bar of the City of New York,* 515 F.2d 427, 432 (2d Cir.), *cert. denied,* 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975) and *Goodrich v. Supreme Court of South Dakota,* 511 F.2d 316, 318, n. 4 (8th Cir. 1975). *Erdmann, Anonymous* and *Goodrich* all derived the "quasi-criminal" label from *In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968) in which the Supreme Court used the "quasi-criminal" appellation in determining the procedural requisites for disbarment proceedings.

9. We have no occasion in this case to determine the extent to which, if any, *Younger* applies to ordinary state administrative proceedings. *Compare Gibson v. Berryhill,* 411 U.S. 564, 575–77, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973) *with Geiger v. Jenkins,* 401 U.S. 985, 91 S.Ct. 1236, 28 L.Ed.2d 525 (1971). Defendant Lowe is the agent of the Supreme Court of the State of Hawaii; his inquiry, and any appeals from it, are part of the Supreme Court's judicial function. *Compare Anonymous v. Association of the Bar, supra,* 515 F.2d at 432, n. 3, *with*

*Polk v. State, supra,* 480 F.2d at 1001 and *cf. Taylor v. Kentucky Bar Association,* 424 F.2d 478, 482 (6th Cir. 1970). Conventional administrative agencies, even when they adopt quasi-judicial procedures, derive their delegated authority not from the courts but from the legislature, *see Prentis v. Atlantic Coast Line,* 211 U.S. 210, 226, 29 S.Ct. 67, 53 L.Ed. 150 (1908), and thus may present different *Younger* considerations. *Compare Polk v. State Bar of Texas,* 480 F.2d 998, supra, at 1001.

10. To the extent it is relevant at all, the informal admonition process is not surrounded by the procedural protections required by *In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968) and therefore presumably does not come within the "quasi-criminal" rubric. We note that the disciplinary proceeding is pending, however, since plaintiff has neither appeared to receive his informal admonition nor notified the Chief Disciplinary Counsel of his intention to appeal pursuant to DR 16.

11. Under our reading of Disciplinary Board Rule 9 and DR 16 once an attorney is notified that he is scheduled for an informal admonition there is no possibility of disbarment proceedings regarding the same offense. Therefore, the facts in this case are similar to the facts in *Polk,* where the plaintiff was seeking a federal injunction against state disciplinary proceedings involving sanctions less severe

■ While we agree with the *Polk* court that bar disciplinary proceedings have nothing to do with the State's criminal laws, we nevertheless apply the *Younger* prohibitions to the present case because the processes for controlling the quality and character of a State's bar are peculiarly within the competence of, and of interest to, the State *judiciary*. We are cognizant of the uncertainty and friction which could result from determining on a case by case basis which state interests are "important" enough to warrant federal abstention.[12] However, the component of *Younger* which rests upon "the notion of 'comity', that is, a proper respect for state functions," *Younger v. Harris, supra*, 401 U.S. at 44, 91 S.Ct. at 750, is nowhere more essential than in questions concerning a state judiciary's ability to regulate itself. Federal interference can only reflect "negatively upon the state court's ability to enforce constitutional principles", *Steffel v. Thompson*, 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974), in the area of bar discipline where the Supreme Court has traditionally recognized the autonomy of the state courts. *See, e. g., Cohen v. Hurley*, 366 U.S. 117, 123–24, 81 S.Ct. 954, 6 L.Ed.2d 156 (1961) and *Theard v. United States*, 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957). As the court in *Erdmann* correctly noted, "It requires little vision to appreciate that if a state court were subject to the supervisory intervention of a federal overseer at the threshold of the court's initiation of a disciplinary proceeding against its own officer, the state judiciary might suffer an unfair and unnecessary blow to its integrity and effectiveness." *Erdmann v. Stevens, supra*, 458 F.2d at 1210. *See also Wallace v. Kern*, 481 F.2d 621, 622 (2d Cir. 1973), *cert. denied*, 414 U.S. 1135,

94 S.Ct. 879, 38 L.Ed.2d 761 (1974). Thus, in the limited area of bar disciplinary proceedings, we recognize an extension of *Younger* and *Huffman* from the criminal law context.

■ There remains for us to consider plaintiff's claim that even if the *Younger* doctrine applies to . disciplinary proceedings his requested relief may still be granted on the basis of an exception to the *Younger* doctrine which permits federal intervention on a showing of bad faith by the state. The bad faith at issue here, it is alleged, stems from certain of the Disciplinary Rules of the Supreme Court of the State of Hawaii which plaintiff claims expose him to more severe sanctions than the informal admonition which he is already scheduled to receive should he decide to appeal defendant's decision. We need not pause to assess whether the Disciplinary Rules in fact have this effect, and if they do, whether they are legal. Any such rules, which apply equally to all members of the Hawaii bar, cannot constitute the type of selective bad faith prosecution which justifies an exception to *Younger*. *See Younger v. Harris, supra*, 410 U.S. at 48, 91 S.Ct. 746. Moreover, any threat which these procedures pose to plaintiff's federal rights may be eliminated by his presentation of his contentions to the Supreme Court of the State of Hawaii and thus does not constitute the irreparable injury required before we may interfere with pending state proceedings. *Id.* at 46, 91 S.Ct. 746.

Since the pending state civil proceedings come within the scope of the *Younger* doctrine and plaintiff has not made a satisfactory showing that any exception to the *Younger* doctrine should be applied, defendant's motion to dismiss

---

than disbarment. *See Polk v. State, supra*, 480 F.2d at 1001–02. *Compare Anonymous v. Association of the Bar, supra*, 515 F.2d at 429 and *Goodrich v. Supreme Court, supra*, 511 F.2d at 317.

12. *See Wallace v. Kern*, 520 F.2d 400, 405 (2d Cir. 1975). *Compare, e. g., Joiner v. City of*

*Dallas*, 380 F.Supp. 754 (N.D.Tex.1974), *aff'd*, 419 U.S. 1042, 95 S.Ct. 614, 42 L.Ed.2d 637 (1975) (*Younger* inapplicable to eminent domain proceedings) *with Fisher v. Federal National Mortgage Association*, 360 F.Supp. 207 (D.Md.1973) (*Younger* applicable to foreclosure proceedings).

is granted. *See Gibson v. Berryhill,* 411 U.S. 564, 577, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973) and *Hamar Theaters, Inc. v. Cryan,* 393 F.Supp. 34, 47, n. 13 (D.N.J. 1975).