**Carlene BENSE, et al.,
Plaintiffs-Appellants,**

**v.**

**Richard STARLING and Anthony Duchinski, Defendants-Appellees.**

**No. 82–2767.**

United States Court of Appeals,
Seventh Circuit.

Argued May 26, 1983.

Decided Oct. 6, 1983.

L. Steven Goldblatt, Fox, Goldblatt & Singer, Inc., St. Louis, Mo., for plaintiffs-appellants.

Allen D. Churchill, St. Clair County Bar Assoc., Belleville, Ill., for defendants-appellees.

Before POSNER and COFFEY, Circuit Judges, and WYATT, Senior District Judge.[*]

WYATT, Senior District Judge.

This is an appeal which, according to the notice of appeal, is by the "plaintiffs" from an order of the United States District Court for the Southern District of Illinois "denying plaintiff's counsel's Motion to appear

_____
[*] Hon. Inzer B. Wyatt of the Southern District of    New York, sitting by designation.

without obtaining local counsel." We have here a situation where sharply differing viewpoints on important questions of law are held by members of the bar of neighboring states. Their viewpoints have been ably expressed in briefs and in oral argument. We find, however, that we are unable to address the merits of this matter because what took place in the District Court did not present any case or controversy to which, under Article III, Section 2, of the Constitution, the judicial power of the United States extends. We feel compelled therefore to dismiss the appeal for want of jurisdiction.

### 1.

Rule 1 of the District Court is in relevant part as follows:

Rule 1. ATTORNEYS

\* \* \* \* \* \*

Attorneys shall be made members of the bar of this Court and permitted to practice generally in this Court on written motion of a member in good standing of the bar of this Court, on condition that they have been admitted to practice by the highest court in any state, and that they reside in or maintain bona fide offices in the Southern District of Illinois.

(a) *Pro Hac Vice Admissions.*

Any attorney admitted to practice by the Supreme Court of the United States or the highest court of any state, may upon motion by a member of the bar of this Court, be permitted to appear of record and participate pro hac vice.

\* \* \* \* \* \*

(c) *Representation in Cases.*

In all cases filed in, removed to, or transferred to this Court, all parties, except governmental agencies or those appearing pro se, must be represented of record by a member of the bar of this Court. Service of notice upon such attorney shall constitute service upon all other counsel appearing of record for such party. Unless otherwise excepted by this Rule, pleadings or other documents submitted by a party who is not represented by a member of the bar of this Court shall not be accepted by the Clerk.

The effect of this Rule is that, unless a lawyer resides in or has an office in the Southern District of Illinois, he may not become a member of the Bar of the District Court and on that account may not appear alone in any matter in the District Court; he must retain a member of the Bar of the District Court to appear with him.

### 2.

The events which led to this appeal began on August 9, 1982, when L. Steven Goldblatt, Esq., a lawyer, whose office was shown to be in St. Louis, Missouri, filed in the District Court at the Clerk's office in East St. Louis, Illinois, a two-page document entitled "Motion To Try A Particular Case."

The first page of this document appears to be a standard form used in the District Court for motions for pro hac vice admissions under Rule 1(a) of that Court. Presumably this one-page form was supplied by the Clerk's office. On this page Goldblatt filled in the caption to show Carlene Bense and others as plaintiffs and Richard Starling and Anthony Duchinski as defendants. There had been no such civil action commenced in the District Court. The motion asked the District Court "to grant permission" to Goldblatt "to appear as attorney of record in the above matter and to participate pro hac vice (for this case only) on behalf of Carlene Bense", and others. On the first page, it was stated, among other things, that Goldblatt was admitted to practice in Illinois and in Missouri and California.

A second page was added by Goldblatt to the standard form; this reads as follows:

3. This cause of action arose in the County of Randolph, State of Illinois and defendants are residents of the State of Florida.

Randolph County is some 100 miles from the City of East St. Louis, Illinois and bringing this action there would result in inconvenience to the parties, witnesses and counsel.

Furthermore, if suit is brought in Randolph County Circuit Court, the cause will likely be removed.

WHEREFORE, Counsel for Plaintiffs prays this Court allow him to appear pro hac vice in this case without local counsel.

The motion was signed by Goldblatt for his law firm, the office address of which was shown as St. Louis, Missouri. So far as appears, no notice of the motion was given to anybody.

The record on appeal is very meager. From the brief submitted by Goldblatt and from oral argument, we learn that the prospective plaintiffs, Missouri residents, were in an automobile which collided with the automobile of the prospective defendants, Florida residents, in the Southern District of Illinois. The prospective plaintiffs retained Goldblatt and his law firm as counsel. Goldblatt wished to commence a diversity action for his clients in the District Court for the Southern District of Illinois, in which a Court House and Clerk's office is located in East St. Louis, Illinois, just across the river from Goldblatt's office in St. Louis, Missouri. For reasons which do not appear in the record on appeal (saving of legal fees might be one of them), Goldblatt, a member of the Illinois Bar, did not wish to retain local counsel in the Southern District of Illinois. This led to the filing of his motion.

Whether the Clerk should have accepted the motion for filing may well be doubted in view of the last sentence of Local Rule 1(c). In any event, the paper was accepted, was assigned a file number with the prefix "Misc-E", and was submitted to Chief Judge Foreman. There was no hearing, no evidence was presented, and no other papers were submitted. So far as appears, no hearing was ever requested.

On October 18, 1982, an order of Chief Judge Foreman was filed. The order is as follows:

> Before the Court is a Motion to Try a Particular Case. Plaintiff's counsel seeks to practice before this Court without obtaining local counsel. Pursuant to Local Rule 1, the motion is hereby DENIED.

IT IS SO ORDERED.

This appeal followed.

3.

To review briefly the familiar: from very soon after the establishment of the federal government, it became a fixed principle of law that federal courts are without power to decide any question which does not arise from one of the "Cases" or "Controversies" enumerated in Section 2 of Article III of the Constitution. To a considerable extent, this principle is connected with the power of federal courts to declare acts of Congress unconstitutional *provided* such a declaration is necessary to the decision of a case. Such was the reasoning of *Marbury v. Madison,* 1 Cranch 137, 177–179, 2 L.Ed. 60 (1803), reasoning which could only be employed if the case to be decided were one *properly* before the Court.

4.

What constitutes a case or a controversy in an Article III context has been the subject of many decisions. It is essential that the dispute be actual, immediate and adverse and not hypothetical, academic, or moot.

One of the classic definitions was by Chief Justice Hughes:

> The controversy must be definite and concrete, touching the legal relations of parties *having adverse legal interests* .... Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties *in an adversary proceeding* upon the facts alleged, the judicial function may be appropriately exercised .... *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41 [57 S.Ct. 461, 463–464, 81 L.Ed. 617] (1937) (emphasis supplied) (citations omitted).

Later, Chief Justice Warren in *Flast v. Cohen,* 392 U.S. 83, 94–95 [88 S.Ct. 1942, 1949–1950, 20 L.Ed.2d 947] (1968) made this statement:

> Embodied in the words 'cases' and 'controversies' are two complementary but somewhat different limitations. In part

those words limit the business of federal courts to questions presented in an *adversary* context and in a form historically viewed as capable of resolution through the judicial process. (emphasis supplied)

### 5.

█ It is essential then to the existence of federal judicial power that there be present before the court a proceeding and that such proceeding be an adversary one. In this matter, there was no such proceeding before the District Court.

There was a motion by Goldblatt praying the court to allow him to appear "in this case without local counsel." The "case" to which the motion referred and the "case" shown in the caption of the papers was Carlene Bense and others against Starling and another. There was no such case. A civil action is commenced by filing a complaint (Fed.R.Civ.P. 3). No complaint has ever been filed for Carlene Bense or the others and no process has ever been issued on their behalf.

The only movant before the Court was Mr. Goldblatt, the attorney. His motion was the only matter before the District Court, and it was *not an adversary matter*. No notice was given to anyone. There was no hearing. There was not, and could not be, any opposition to the motion because there were no "parties" before the Court.

The situation was in fact reasonably clear. Goldblatt had clients who wished to commence an action in the District Court. The motion to the District Court in substance asked that Court to make an exception to Local Rule 1 for the case of Bense and others to allow Goldblatt to commence and prosecute the case by himself alone, without local counsel. There was no demand for this as a constitutional right; there was no assertion that Local Rule 1 was unconstitutional. The motion did not ask for a judicial decision between adversary parties, but rather for a ministerial act by the District Judge granting an exception to a court rule. Chief Judge Foreman denied the motion "[p]ursuant to Local Rule 1." Whatever may have been its basis, the order seems to us to have been an administrative step rather than the exercise of an Article III power of judicial decision.

█ Even if the order of Chief Judge Foreman was appealable, the notice of appeal as filed was not effective to invoke the jurisdiction of this Court. The notice of appeal was filed by "Carlene Bense et al., plaintiffs above named." Bense and the others are not parties to any civil action in the District Court. Only a party to an action can appeal from an order or judgment therein. This was declared in few words some years ago by the Supreme Court: "One who is not a party to a record and judgment is not entitled to appeal therefrom." *Ex Parte Leaf Tobacco Board of Trade*, 222 U.S. 578, 581, 32 S.Ct. 833, 833, 56 L.Ed. 323 (1911); *see United States ex rel. the State of Louisiana v. Jack*, 244 U.S. 397, 402, 37 S.Ct. 605, 607, 61 L.Ed. 1222 (1916).

### 6.

There are two decisions of this Court which, while involving state court action on Illinois Bar admission matters, employ case or controversy reasoning equally applicable here.

In *Ktsanes v. Underwood*, 552 F.2d 740 (7 Cir.1977), *rehearing denied*, 560 F.2d 790 (7 Cir.1977), *cert. denied*, 435 U.S. 933, 98 S.Ct. 1508, 55 L.Ed.2d 530 (1978), Ktsanes had been admitted to the Kentucky Bar. He was qualified for admission to the Illinois Bar under a reciprocity agreement between Illinois and Kentucky. He had, however, previously taken and failed the Illinois Bar examination. Rule 705(d) of the Illinois Supreme Court provided that an otherwise qualified attorney from another state who had taken and failed the Illinois Bar examination is not eligible to apply for admission to the Illinois Bar on foreign license. Pursuant to this rule, the Illinois Board of Law Examiners denied Ktsanes an application for admission on foreign license. Ktsanes next petitioned the Justices of the Illinois Supreme Court for an exemption from Rule 705(d). This petition was denied. Ktsanes

then commenced an action under 42 U.S.C. § 1983 in the United States District Court for the Northern District of Illinois against the members of the Illinois Board of Law Examiners and the Justices of the Illinois Supreme Court. He asserted that Rule 705(d) violated the equal protection clause of the Fourteenth Amendment and asked for an injunction against its enforcement. The District Court dismissed the action. This Court reversed.

The relevant issue in this Court was whether the denial by the Illinois Supreme Court of Ktsanes' petition for exemption constituted a judicial decision in a case or controversy in the federal constitutional sense. If so, the Supreme Court of the United States would have jurisdiction to review the decision by certiorari (28 U.S.C. § 1257(3); In re Summers, 325 U.S. 561, 65 S.Ct. 1307, 89 L.Ed. 1795 (1945)). But, as Mr. Justice Black put it bluntly:

> ". . . lower federal courts possess no power whatever to sit in direct review of state court decisions." *Atlantic C.L.R.R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 296, 90 S.Ct. 1739, 1748, 26 L.Ed.2d 234 (1970).

If the decision of the Illinois Supreme Court could have been reviewed by the Supreme Court of the United States, then no lower Federal court would have jurisdiction of a civil action under 42 U.S.C. § 1983 attacking that decision because such action would in substance be asking for a review of the state court decision. So the *Ktsanes* decision recognized (552 F.2d at 741, 742).

The *Ktsanes* decision was that the Illinois Supreme Court decision could not have been reviewed by the Supreme Court of the United States because it was not made in a case or controversy. This Court described the proceedings in the Illinois Supreme Court in terms applicable to what took place before Chief Judge Foreman in the matter now before us:

> When Ktsanes petitioned the Illinois court, the petition was merely one for exemption from the rule, not a challenge ·of it. There was no 'claim of present right to admission to the bar of a state

and a denial of that right' which the *Summers* Court held to create a case or controversy under Article III. . . . Ktsanes never argued the question of the validity of Rule 705(d) before the Illinois Supreme Court. He was asking for ministerial action, not judicial determination. The denial of his petition was made by the court acting in an administrative capacity. That denial did not present a case or controversy cognizable by an Article III court, and, thus, was not appealable to the Supreme Court of the United States. 552 F.2d at 743 (citations omitted).

This Court has recently approved and followed *Ktsanes* in determining whether bar admission proceedings before the Illinois Supreme Court presented a case or controversy in the federal constitutional sense. *Lowrie v. Goldenhersh,* 716 F.2d 401, 406 (7th Cir.1983).

We have taken into account whether a recent decision of the Supreme Court in this area, *District of Columbia Court of Appeals v. Feldman,* —— U.S. ——, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), affects the conclusion we reach here and the value of the two earlier decisions of this Court as authority for that conclusion. *Feldman* involved bar admission rules of the District of Columbia Court of Appeals (which is the equivalent of the highest court of a state for purposes of certiorari review under 28 U.S.C. § 1257(3)) and petitions for a waiver under one of those rules. The petitions were denied. Thereafter, these denials were attacked in civil actions in the United States District Court for the District of Columbia. As the case reached the Supreme Court, a crucial question was whether the "waiver" petitions, and orders in the District of Columbia Court of Appeals were in "cases" or "controversies" under Article III. On facts very different from those in the case at bar, the Supreme Court decided that they were. The Supreme Court found that the applicants in their petitions and in the proceedings had claimed a *present right* to admission to the Bar (103 S.Ct. at 1314). While this finding may seem (at least as to one of

the applicants) without very strong support (and prompted a dissent by Justice Stevens), it was made. No such finding could be made in the case at bar. We are unable to see that the *Feldman* decision in any way affects our conclusion here or that it in any way affects the two earlier decisions of this Court on which in part we rely.

We are satisfied that precedents in this Court, based on established principles of federal jurisdiction, require us to dismiss the appeal attempted here.

We believe that, if a resolution be desired of the constitutional questions sought to be raised on this appeal, they can be presented in a procedural form within the jurisdiction of the District Court and of this Court.

This appeal is dismissed for want of jurisdiction.